IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| EMILY SILVERS,<br><br>        Plaintiff,<br><br>v.<br><br>BARTOW COUNTY SCHOOL DISTRICT,<br><br>        Defendant. | Civil Action No.<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Emily Silvers ("Plaintiff" or "Silvers") files this Complaint against Defendant Bartow County School District ("Defendant"). Plaintiff shows the Court as follows:

## NATURE OF THE ACTION

1.  Plaintiff asserts claims against Bartow County School District under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 ("Title VII"), for pregnancy discrimination (Count I), failure to accommodate (Count II), and retaliation (Count III). Plaintiff seeks declaratory relief, lost wages and benefits, compensatory, interest, and attorneys' fees and costs.

2. Plaintiff also asserts claims against Defendant for retaliation in violation of the Family Medical and Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*, as amended, ("FMLA") (Count IV). Plaintiff seeks injunctive, declaratory and other equitable relief; back pay and restoration of lost benefits; reinstatement or front pay; and attorneys' fees and costs.

3. Plaintiff further asserts claims against Defendant for retaliation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Count V).

4. Plaintiff asserts claims against Defendant for retaliation in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA") (Count VI).

## JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction over Plaintiff's claims, pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claim because such claim is so related to Plaintiff's employment claims brought under federal law that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment

practices described herein were primarily committed within the Rome Division of the Northern District of Georgia, where Defendant is located and employed Plaintiff.

## PARTIES

8. Plaintiff is a resident of the State of Georgia and submits herself to the jurisdiction of this Court.

9. Plaintiff was Defendant's "employee" within the meaning of Title VII at all relevant times.

10. Plaintiff was an "eligible employee" of Defendant's within the meaning of the FMLA, 29 U.S.C. § 2611(2).

11. Plaintiff was classified as a non-exempt employee in the position of Magnet Clerk.

12. Plaintiff was a "public employee" as that term is defined by the GWA, O.C.G.A. § 45-1-4(a)(3) at all relevant times.

13. Defendant is a public corporate body with the capacity to sue and be sued, is organized under Georgia law, and is a local governmental entity providing public services within the boundaries of the Rome Division of the Northern District of Georgia.

14. Defendant is governed by Bartow County Board of Education and may be served with process by delivering a copy of the Summons and Complaint to its Superintendent, Dr. Phillip Page, at 65 Gilreath Road, Cartersville, GA 30121.

15. Defendant was an "employer" within the definition of Title VII, 42 U.S.C. § 2000e(b) at all relevant times.

16. Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(iii) at all relevant times.

17. Defendant employed Plaintiff from July 2021 to February 20, 2023, as a non-exempt employee in the position of Magnet Clerk.

18. Defendant is governed by and subject to 29 U.S.C. § 207.

19. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq*.

20. At all relevant times, Defendant has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(B) and (C) because it "is engaged in the operation of… a preschool, elementary or secondary school…" and is a public agency.

21. At all relevant times, Defendant was an "employer" of Plaintiff as that term is defined by 29 U.S.C. § 203(d).

22. Defendant was a "public employer" within the meaning of the GWA, O.C.G.A. § 45-l-4(a)(4), at all relevant times.

## ADMINISTRATIVE EXHAUSTION

23. Plaintiff has satisfied all administrative prerequisites for bringing her Title VII claims in this Court.

24. On May 8, 2023, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 410-2023-04965), in which she asserted pregnancy discrimination, failure to accommodate, and retaliation.

25. On November 20, 2023, the EEOC and United States Department of Justice Civil Rights Division issued a Notice of Right to Sue ("NTRS") on Plaintiff's EEOC Charge.

26. Plaintiff files her Complaint within ninety (90) days of her receipt of the NRTS.

## STATEMENT OF FACTS

27. Silvers was employed by Bartow County School System from July 2021 until on or about February 20, 2023, as Magnet Clerk at Adairsville High School.

28. Silvers was pregnant and delivered her child in January 2022.

29. Silvers was on approved leave from January 2022 to April 2022.

30. In April 2022, Silvers returned from leave.

31. After Silvers' return, Silvers was still lactating and had to pump every two to three hours for twenty minutes at a time.

32. As a Magnet Clerk, Silvers had her own office that she used as a pumping room and kept her office door closed for twenty minutes.

33. While Silvers pumped, if students needed help, they were sent to her supervisor, Beth Payton, Magnet Coordinator.

34. This was permitted by her supervisor and the principal at the time of the 2021-2022 school year.

35. In August 2022, Lexie Bultman assumed the role of principal at Adairsville High School.

36. On October 31, 2022, Silvers requested FMLA leave from October 2, 2022, to November 15, 2022, to provide care for her spouse who was in a serious car accident and required medical care.

37. On November 7, 2022, Chief of Human Resources Officer Macy M. Defnall approved Silvers' request for intermittent FMLA leave.

38. Two days after Silvers' FMLA leave was approved, on November 9, 2022, Bultman suddenly began holding performance evaluations with Silvers and stating that she was "unavailable to students."

39. On November 9, 2022, Bultman called a meeting with Silvers and Payton to discuss job performance.

40. When Silvers met Bultman for the first time, she said, "You had a baby last year. So you had a baby and returned in April."

41. Silvers responded that this was correct.

42. Bultman then said, "Okay, interesting."

43. Bultman then stated that Silvers was "unavailable to the students."

44. Silvers informed Bultman that she was only unavailable to students when she had the door shut to express breastmilk, which occurred every two to three hours for twenty minutes. These were the only times when Silvers was unavailable to students.

45. On November 10, 2022, Silvers received a letter from Bultman that stated she had discussed job performance with Silvers. Bultman stated, in part, that "We discussed the unprofessionalism associated with inaccessibility to students and visitors." Bultman stated that the failure to improve may result in disciplinary action, including termination.

46. Bultman knew that the only times Silvers was unavailable to students was when she pumped in her office.

47. At the time that Bultman began holding meetings with Silvers about her purported unavailability to students and the potential for termination if corrective action was not taken, Silvers was still on her approved intermittent FMLA leave.

48. On November 15, 2022, Silvers complained to Angela Farmer in Human Resources ("HR") regarding Bultman's comments and reported that she was concerned for her job due to her need to pump throughout the day.

49. Silvers reported to Farmer that Bultman knew she was pumping and that those were the only times she was unavailable to students.

50. Silvers further complained to Farmer that she was legally allowed to express breastmilk and could not be prevented from doing so.

51. When making her complaint to Human Resources, Silvers specifically stated that she was legally allowed to express breast milk and could not be prevented

8

from doing so. Silvers further stated that Bultman knew that the only times she was unavailable to students were when she was expressing breast milk in the privacy of her office with the door shut.

52. Silvers' complaint constituted an objection to an activity, policy, or practice by Bartow County School District that Silvers reasonably believed was in violation of the law for purposes of GWA.

53. Silvers' complaint also constituted protected activity for purposes of Title VII and FLSA.

54. On November 15, 2022, a few hours after Silvers' meeting with HR, Bultman called Silvers and told her that neither her breast pumping nor her FMLA leave in October of 2022 had to do with the "issue." Instead, Bultman stated, again, that the "issue" was that she was unavailable to the students. Silvers asked Bultman why she believed she was unavailable to the students, to which Bultman replied, "Figure it out."

55. After this meeting, Silvers went to her supervisor, Payton, to ensure that she was doing her job properly.

56. Payton told Silvers that she was doing a great job.

57. On December 9, 2022, Bultman held another meeting to discuss her job performance. Bultman again said that Silvers was unavailable to students. During

her evaluation, whenever Silvers asked Bultman how to improve, Bultman replied, "Figure it out."

58. Bultman then provided Silvers with a letter stating she had "demonstrated improvement with prompt attendance, visibility, and accessibility" but that there were continued issues with school awareness, ability to work in a hectic environment, and task follow-through.

59. Bultman did not discuss the items referenced in the letter in the preceding paragraph in Silvers' meeting with her. Bultman only discussed Silvers' alleged unavailability to students.

60. On February 20, 2023, Bultman terminated Silvers, allegedly for being unavailable to the students as well as other concerns that Bultman stated she could not discuss with Silvers.

61. Defendant's reasons for terminating Plaintiff's employment were pretextual.

62. Defendant discriminated against Plaintiff by terminating her employment because she had a pregnancy-related condition, failed to provide a reasonable accommodation for her pregnancy-related condition, and terminated her for engaging in protected activity, all in violation of Title VII.

63. Additionally, Defendant terminated Plaintiff in retaliation for engaging in protected activity under the FMLA, FLSA, and GWA.

64. Due to Defendant's violations, Plaintiff has experienced lost compensation, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

65. Defendant acted with malice and/or with reckless indifference to Plaintiff's federally-protected rights and acted with the specific intent to harm Plaintiff.

## COUNT I
### Pregnancy Discrimination in Violation of Title VII

66. Plaintiff was a member of a protected class for the purposes of Title VII as Plaintiff, following her pregnancy, was lactating, which is a related medical condition of pregnancy.

67. Plaintiff was qualified for the position of Magnet Clerk, which she had successfully performed for almost two years.

68. Defendant terminated Plaintiff's employment on or about February 20, 2023, because of her pregnancy-related condition.

69. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

11

70. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, interest, and reasonable attorneys' fees and costs.

## COUNT II
### Failure to Accommodate in Violation of Title VII

71. Plaintiff was a member of a protected class for the purposes of Title VII as Plaintiff, following her pregnancy, was lactating, which is a related medical condition of pregnancy.

72. At all relevant times, Defendant was an "employer" within the meaning of Title VII.

73. Plaintiff was qualified for the position of Magnet Clerk, which she had successfully performed for almost two years.

74. Plaintiff requested to shut her office door to express breastmilk every two to three hours for twenty minutes.

75. Initially, Defendant permitted Plaintiff's requested accommodation.

76. However, in the 2022-2023 school year, under Bultman, the new school Principal, Plaintiff was written up for being "unavailable."

77. In response, Silvers informed Bultman that she was only unavailable to students when she had the door shut to express breastmilk, which occurred every two to three hours for twenty minutes.

78. Bultman continued to write up Plaintiff for being "unavailable" and eventually terminated Plaintiff for being "unavailable."

79. Defendant terminated Plaintiff so that it no longer had to provide her with her reasonable accommodation.

80. Bultman, as Principal, had the authority to make decisions regarding, *inter alia*, providing an accommodation on behalf of Defendant.

81. Defendant did not provide Plaintiff with a reasonable accommodation for her pregnancy related condition but instead terminated Plaintiff on February 20, 2023.

82. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

83. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, interest, and reasonable attorneys' fees and costs.

### COUNT III
### Retaliatory Termination in Violation of the Title VII

84. Plaintiff was a member of a protected class for the purposes of Title VII as Plaintiff, following her pregnancy, was lactating, which is a related medical condition of pregnancy.

85. At all relevant times, Defendant was an "employer" within the meaning of Title VII.

86. Plaintiff was qualified for the position of Magnet Clerk, which she had successfully performed for almost two years.

87. Plaintiff engaged in protected activity under Title VII, by making a complaint to Human Resources, in which she specifically stated that she was legally allowed to express breast milk and could not be prevented from doing so.

88. On November 15, 2023, Plaintiff complained to HR that Bultman had stated that she was "unavailable" to students, knew she was pumping and that those were the only times she was unavailable to students. Plaintiff complained to HR that she was legally allowed to express breastmilk and could not be prevented from doing so.

89. Between November 2022 and February 2023, Bultman continuously wrote up Plaintiff for being "unavailable" to students.

90. Defendant terminated Plaintiff on February 20, 2023, for being "unavailable" to students.

91. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

92. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, interest, and reasonable attorneys' fees and costs.

93. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, interest, and reasonable attorneys' fees and costs.

## COUNT IV
## Retaliation in Violation of the FMLA

94. Plaintiff was an "eligible employee" who was entitled to a total of twelve workweeks of leave in order to care for her spouse who had a serious medical condition within the meaning of 29 U.S.C. § 2612(a)(1)(C).

95. Plaintiff was eligible for FMLA leave under 29 U.S.C. § 2611(2)(A).

96. Defendant had 50 or more employees within 75 miles of Plaintiff's worksite.

97. On October 31, 2022, Plaintiff requested FMLA leave from October 2, 2022, to November 15, 2022, to provide care for her spouse who was in a serious car accident and required medical care. On November 7, 2022, the Chief of Human Resources approved Plaintiff's request for intermittent FMLA leave. Two days after Plaintiff's FMLA leave was approved, on November 9, 2022, Bultman suddenly began holding performance evaluations with Plaintiff and stating that she was "unavailable to students."

98. At the time that Bultman began holding meetings with Plaintiff about her purported unavailability to students and the potential for termination if corrective action was not taken, Plaintiff was still on her approved intermittent FMLA leave.

99. Plaintiff engaged in statutorily protected activity by giving notice to Defendant of her need to care for her spouse because of spouse's serious health condition and applying for that leave, to which she was entitled under 29 U.S.C. § 2612(a)(l)(C).

100. By terminating Plaintiff's employment because she exercised her rights under 29 U.S.C. § 2612(a)(l)(C), Defendant retaliated against Plaintiff because of her exercise of rights under the FMLA.

101. Defendant's actions in retaliating against Plaintiff because she exercised her rights under the FMLA were committed with reckless disregard for her right to take up to twelve workweeks of leave time to care for her spouse who had a serious medical condition in violation of 29 U.S.C. § 2612(a)(l)(C).

102. Plaintiff is entitled to declaratory relief, lost wages and benefits, front pay or reinstatement, and expenses of litigation, including reasonable attorneys' fees and costs.

103. Plaintiff also is entitled to liquidated damages for the willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(l)(A)(iii).

## COUNT V
## Retaliation in Violation of the FLSA

104. Plaintiff engaged in protected activity under the FLSA by complaining to HR that she was legally allowed to take breaks to express breastmilk and that she could not be prevented from doing so. By and through these complaints, Plaintiff opposed violations of 29 U.S.C. § 207(r).[1]

105. In retaliation for Plaintiff's protected activity, Defendant terminated Plaintiff's employment, in violation of the FLSA, and specifically, 29 U.S.C. § 215.

106. Defendant's retaliatory termination of Plaintiff was willful and not in good faith.

107. As a consequence of Defendant's retaliatory termination of Plaintiff, she suffered lost wages and emotional distress.

108. Plaintiff is entitled to declaratory relief, lost wages and benefits, front pay or reinstatement, liquidated damages, compensatory damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

---

[1] Under Section 207(r), the FLSA required reasonable break time for hourly employees to express breast milk in a private place each time the employee needed to express milk for one year after the employee's child's birth. On December 29, 2022, Providing Urgent Maternal Protections ("PUMP") for Nursing Mothers Act ("PUMP Act") was signed into law, which deleted 29 U.S.C. § 207(r) and replaced it with a new section, 29 U.S.C. § 218d. At the time Plaintiff complained that she was legally permitted to express breastmilk, 29 U.S.C. § 207(r) was the operative statute.

## COUNT VII
### Retaliation in Violation of the GWA

109. Subsection O.C.G.A. § 45-1-4(d)(2) of the GWA prohibits public employers from retaliating against employees for disclosing violations of law, rule, or regulation to a supervisor or government agency.

110. Subsection O.C.G.A. § 45-1-4(d)(3) of the GWA prohibits public employers from retaliating against employees for objecting to, or refusing to participate in, any activity, policy, or practice that the employee has reasonable cause to believe is in violation of or noncompliance with the law, rule, or regulation.

111. Plaintiff engaged in protected activity under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 because Plaintiff disclosed and objected to violations of Title VII, the FLSA, O.C.G.A. § 45-1-7, and Bartow County School District regulations and rules permitting reasonable breaks for expressing breastmilk.

112. By reporting and complaining about her legal right to take breaks to express breastmilk and that she could not be prevented from doing so, Plaintiff disclosed and objected to violations of federal law.

113. Defendant terminated Plaintiff's employment because of her protected activity of disclosing and objecting to violations of federal law.

114. Defendant's retaliatory termination of Plaintiff caused her to incur damages, which include lost wages and benefits, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

115. Plaintiff is entitled to damages under the GWA against Defendant that include reinstatement or front wages, compensation for lost wages and benefits, compensatory damages, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a) A declaratory judgment that Defendant's practices complained of herein violated the Title VII, FMLA, FLSA, and GWA;

b) An award of compensatory damages;

c) Lost wages and benefits;

d) Liquidated damages from Defendant's FMLA and FLSA violations;

e) Prejudgment and post-judgment interest;

f) Reinstatement and/or front pay and benefits;

g) Costs and expenses of this action, including reasonable attorneys' and expert fees; and

h) Such other and further relief as this Court deems just and proper.

Respectfully submitted, this 31st day of January 2024.

*/s/ Grace A. Starling*
Justin M. Scott
Georgia Bar No. 557463
Grace A. Starling
Georgia Bar No. 464958
RADFORD SCOTT LLP
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
gstarling@radfordscott.com

*Counsel for Plaintiff*
